## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>388 ROUTE 22 READINGTON HOLDINGS, LLC,<br><br><div align="center">Debtor.</div> | Civil Action No. 21-01239 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Presently before the Court are an appeal, filed by SB Building Associates Limited Partnership ("SB" or "Appellant"), and cross-appeal, filed by Atkinson & DeBartolo ("A&D" or "Appellee"), of the Bankruptcy Court's decision to award attorneys' fees to A&D arising from its representation of Bunce Atkinson ("Trustee"), the bankruptcy trustee in the underlying bankruptcy matter. For the following reasons, this Court affirms the Bankruptcy Court's decision, but modifies the fee award by upwardly adjusting the attorneys' fees in the amount of $5,502.85 and the expenses in the amount of $91.10, due to a calculation error on the part of A&D.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court sets forth only the facts from the record relevant to the parties' dispute. On October 9, 2018, the Debtor filed for Chapter 11 bankruptcy, which stayed a Sherriff's Sale of the Debtor's property, located at 388 Route 22, Readington, New Jersey (the "Property"), scheduled by secured creditor, Iron Mountain Management, LLC.[1] *In re 388 Route 22 Readington Holdings, LLC*, No. 18-30155 (Bankr. D.N.J. Oct. 9, 2018), ECF No.1 ("Bankr. Dkt."). On November 19,

---

[1] The Debtor filed its first Chapter 11 bankruptcy on July 31, 2013 (Bankruptcy Case No. 13-26699), which also resulted in a stay of the Sherriff's Sale of the Property scheduled by Iron Mountain after a foreclosure judgment in July 2011. *See generally In re 388 Route 22 Readington Holdings, LLC,* No. 13-26699 (Bankr. D.N.J. July 31, 2013). The Bankruptcy Court confirmed a modified plan of reorganization, ECF No. 158, and on August 4, 2017, entered a final decree that the bankruptcy estate had been fully administered. ECF No. 195.

2018, the Debtor's case was converted from a Chapter 11 to a Chapter 7 proceeding, Bankr. Dkt. No. 29, and on November 20, 2018, Bunce Atkinson was appointed as the Chapter 7 Trustee. Bankr. Dkt. No. 32.  That same day, the Bankruptcy Court stayed the sale of the Property.  Bankr. Dkt. No. 30.  Later, on Dec. 6, 2018, A&D was appointed as attorneys for the Trustee.  Bankr. Dkt. No. 47.  A&D served as the Trustee's attorney until July 25, 2020.  Bankr. Dkt. No. 179.

During and after its time as Trustee counsel, A&D filed two separate attorneys' fees applications for work completed on behalf of the Trustee.[2]  ECF No. 1 at 2 ("Memorandum Opinion").  A&D filed the first fee application ("First Fee Application"), on an interim basis, on June 10, 2019, for fees in the amount of $27,049.00, and disbursements of $254.82, covering the period of November 21, 2018 to May 30, 2019.  Bankr. Dkt. No. 76.  No objections were filed. Br. of Appellee at 8.  On September 26, 2019, the Bankruptcy Court granted the requested fees in full, totaling $27,303.82.  Bankr. Dkt. No. 84.  A&D filed its second fee application ("Second Fee Application") on August 19, 2020, seeking attorneys' fees in the amount of $56,900, and disbursements totaling $247.25, for the period of June 1, 2019 to August 6, 2020.  Bankr. Dkt. No. 187, 204.  In that Second Fee Application, aside from $120 in paralegal fees and $295 in attorneys' fees for preparing the Second Fee Application, A&D did not seek any legal fees between April 21, 2020, and July 25, 2020.  *Id*.  After filing the Second Fee Application, A&D discovered that the Application's attached billing records were from a different matter, and consequently, filed a corrected Second Fee Application on August 24, 2020 with the appropriate records.  Bankr. Dkt. No. 189.  SB filed objections to the corrected Second Fee Application.  Bankr. Dkt. No. 203.  Later, upon reviewing their corrected Second Fee Application, A&D discovered that three pages of time

---

[2] The Trustee and Kelly Firm, another firm that represented the Trustee, also sought fees, and they were granted by the Bankruptcy Court.  SB is not appealing those decisions.

records, which totaled over $6,100 in fees, had mistakenly been omitted.  Br. of Appellee at 9.  On September 18, 2020, A&D filed a second corrected Second Fee Application to include these missing pages.  Bankr. Dkt. No. 204.  On October 8, 2020, SB filed additional objections.  Bankr. Dkt. 216.

## A.  Bankruptcy Court's Memorandum Opinion

On November 5, 2020, the Bankruptcy Court heard oral argument regarding three applications for compensation, including A&D's Second Fee Application.  Following oral argument, the Bankruptcy Court issued a Memorandum Opinion on January 11, 2021, that revised its previous decision granting the First Fee Application, and awarded fees to A&D from the Second Fee Application.  Specifically, the Bankruptcy Court downwardly adjusted A&D's Second Fee Application by $13,890.85 in fees and $91.10 in expenses, thereby granting total fees of $43,009.15 and expenses of $156.15.  Memorandum Opinion at 19.  In so doing, the Bankruptcy Court found "numerous examples" of work inappropriately billed by A&D that should have been characterized as trustee work, including time billed communicating with creditors and reviewing claims.  *Id*. at 17-18.  Although some of these communications may have related to litigation, the entries' lack of detail left the Bankruptcy Court unable to discern their nature.  *Id*. at 18.  On this basis, the Bankruptcy Court reduced A&D's award by $5,958.  *Id*.  In addition, because numerous entries were billed after A&D was replaced as counsel, the Bankruptcy Court found that these services must have been trustee functions, otherwise such work would be unnecessary duplication of services.  *Id*.  On that basis, the Bankruptcy Court reduced A&D's award by $399.  *Id*.  The Bankruptcy Court also made a downward adjustment of $1,427 for time entries containing insufficient detail to conclude services were beneficial to the estate, billed at a reasonable rate, or not duplicative.  *Id*.  Finally, the Bankruptcy Court noted that A&D's second corrected fee

application, which sought to correct errors in the billing entries attached to the application, suffered from the same errors as the original version of the Second Fee Application, and the fee balance stated a total balance due of $50,793.15 in attorneys' fees and $156.15, rather than the requested $56,900 for attorneys' fees and $247.25 for expenses. *Id*. at 18-19. For this reason, the Bankruptcy Court further reduced the Second Fee Application by $6,106.85 in attorneys' fees and $91.10 for expenses. *Id*. at 19.

As to the First Fee Application, although no objections had been lodged at the time it was filed, the Bankruptcy Court explained that because its decision awarded an interim fee, the Court could reevaluate. *Id*. (citing 11 U.S.C. §§ 330, 331). As to this Application, the Bankruptcy Court rejected whole categories of objections from SB, including objections that certain time spent on reviewing legal documents was not a trustee function, as well as objections that A&D's billing for work outside the bankruptcy proceedings was unnecessary; the Bankruptcy Court reasoned that a "lawyer in a case as complex and litigious as this one cannot be expected to provide services while wearing [blinders]." *Id*. at 22. The Bankruptcy Court also noted that A&D's attempts to settle with Iron Mountain were reasonably undertaken at the time and not excessive. *Id*. at 22-23. In that connection, the Bankruptcy Court noted SB's objection to A&D attorney communications with the parties in the sewer litigation[3] was one of many inconsistent objections by SB, because a favorable settlement of that litigation was necessary for the Property to reach the $5 million valuation SB claimed it was worth. *Id*. at 23. However, the Bankruptcy Court did agree with some

---

[3] The "sewer litigation" refers to a near decade-long dispute brought by the Debtor against Readington Township and various private entities to compel the transfer of unused sewer capacity to the Property at issue here. *388 Route 22 Readington Realty Holdings, LLC v. Township of Readington, et al.*, 221 N.J. 318, 326 (2015). There is no dispute that if the sewer litigation concluded in the Debtor's favor, the Property's value would increase substantially, and as such, it could be sold for an amount sufficient to pay all outstanding creditors, which is what occurred. Memorandum Opinion at 23; Br. of Appellee at 12.

of SB's objections, and while the court was not specific as to which entries it was discussing, the court explained that certain time entries for .1 hours for "left message" or "review" and entries reviewing claims were perfunctory activities or clearly trustee functions.  *Id*.  The Bankruptcy Court also found that there was attorney time that should have been billed at a lower rate.  *Id*.  For these entries, the Bankruptcy Court reduced the fee request by $4,798.  *Id*.  Finally, there was time billed at a full rate for travel, which required an additional reduction of $750.  *Id*. at 23-24.  In total, the Bankruptcy Court reduced the previous First Fee Application award by $5,548 from the original $27,303.82.  *Id*. at 24.  The Bankruptcy Court ordered A&D to either refund that amount to the bankruptcy estate, or reduce its total fees awarded by that amount pursuant to § 330(a)(5).

|  | Atty. Fees Requested | Atty. Fees Reduced | Expenses Requested | Expenses Reduced | Total Fees and Expenses Awarded |
|---|---|---|---|---|---|
| First Fee Application | $27,049.00 | ($5,548.00) | $254.82 | ~ | $21,755.82 |
| Second Fee Application | $56,900.00 | ($13,890.85) | $247.25 | ($91.10) | $43,165.30 |

On this appeal, SB and A&D appeal the Bankruptcy Court's decisions on both fee applications.

## B.  SB's Appeal

SB argues that "the services performed by [A&D] as described in its two Fee Applications do not support the amounts approved by the Bankruptcy Court."  Br. of Appellant at 4.  SB asserts that neither of A&D's Fee Applications establishes that A&D performed any legal services for the Trustee, but rather, exclusively performed trustee services, such as retaining professionals, negotiating with Iron Mountain regarding the Property sale, and seeking approval of the Property sale.  *Id*. at 2-3.  SB also claims that the descriptions in the Fee Applications were insufficiently specific to determine whether the services were reasonable and necessary legal services.  *Id*. at 6-7.  Further, SB argues that A&D's time entries reflect numerous actions that were of no benefit to

5

the estate, including time spent regarding Iron Mountain's request that its legal fees be included in their secured claim[4] and work performed to remove a *lis pendens* placed on the Property by SB after the closing of the sale to the auction buyer. *Id*. at 7-8.  SB also contends that Bunce Atkinson, Esq., a senior partner at A&D, completed most of the billed tasks, and these tasks did not require a senior person billing such a high rate. *Id*. at 8.  In light of these assertions, SB argues that the Bankruptcy Court failed to appropriately consider SB's line-by-line billing objections, and failed to provide a detailed explanation for the amounts reduced from the First Fee Application and the downward adjustment in the Second Fee Application. *Id*. at 9-10.  For these reasons, SB asks this Court to reverse the Bankruptcy Court's fee awards to A&D and remand the matter for a more complete analysis of SB's objections. *Id*. at 12.

### C. A&D's Opposition Brief and Cross-Appeal

A&D opposes SB's appeal and cross-appeals, asserting that the Bankruptcy Court correctly determined that A&D was entitled to fees and expenses from the First Fee Application and Second Fee Application, but, in its review, the Bankruptcy Court erred in reducing the award in the First Fee Application by $5,548 and erred as a matter of fact and law in reducing the requested award

---

[4] Iron Mountain is the former secured creditor of SB. *In re Route 388 Route 22 Readington Holdings, LLC*, No. 20-02954, 2020 WL 6707958, at *1 (D.N.J. Nov. 16, 2020).  In 2007, Iron Mountain sold SB the Property in exchange for a purchase money mortgage. *Id*.  SB ultimately defaulted on that mortgage, which led to foreclosure proceedings on the Property. *Id*.  After receiving a foreclosure judgment against SB, Iron Mountain scheduled a Sheriff's sale in July 2013 to recover the judgment, but on the day of the sale, SB filed for Chapter 11 bankruptcy. *Id*.  After considerable negotiations, Iron Mountain and SB agreed to a repayment plan, which included, in the event of default, payment of Iron Mountain's attorneys' fees. *Id*.  SB ultimately defaulted on the repayment plan. *Id*.  Iron Mountain scheduled another Sheriff's sale for October 2018 to recover the amount due from the repayment plan, but, once again, SB, commencing the instant bankruptcy proceeding, filed for Chapter 11. *Id*.  From January 2019 until the property was sold in December 2019, A&D and Iron Mountain negotiated multiple stays of Sheriff's sale scheduled by Iron Mountain such that the Trustee could attempt to sell the Property at a higher value than Iron Mountain might otherwise obtain. *Id*. at *2.  The Trustee secured a buyer at auction for $3,200,000. *Id*.

in the Second Fee Application by \$13,890.85 in fees and \$91.10 in expenses. Br. of Appellee at 21. Specifically, regarding the First Fee Application, A&D argues that the billing rate charged by Mr. Atkinson was expressly found by the Bankruptcy Court to be reasonable and commensurate with his legal experience. *Id*. at 28; Memorandum Opinion at 26-28. A&D also asserts that the work performed in connection with negotiating a consent order with Iron Mountain regarding the Property sale and state court litigation related to sewer issues with the Property was not trustee work, but rather, legal work necessary and beneficial to the administration of the estate. *Id*. at 30. As to the Second Fee Application, A&D claims that the Bankruptcy Court erred as a matter of fact when it reduced the requested fee amount, because the court failed to consider A&D's second corrected Second Fee Application, which contained three missing pages that were not in the first corrected Second Fee Application. *Id*. at 25-26. In addition, A&D argues that the remaining time entries in the Second Fee Application were reasonable and necessary for the administration of estate, and the time entries contained sufficient detail and these entries involved legal, and not trustee, work. *Id*. at 26-27.

## II.   **LEGAL STANDARD**

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8001(a). On appeal, this Court reviews the award of attorneys' fees for abuse of discretion, "which can occur 'if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous.'" *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 258 (3d Cir. 1995) (quoting *Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356, 359 (11th Cir. 1994)). However, a bankruptcy court's conclusions of law are reviewed *de novo*. *See Brown v. Pennsylvania State Emps. Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988). On

the other hand, a finding of fact is entitled to more deference and can only be overturned as clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the deliberate and firm conclusion that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). When a party presents mixed questions of law and fact, the reviewing court applies the appropriate standard to each component of the challenge. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1222-23 (3d Cir. 1989).

The highly deferential standard afforded to a lower court's finding of facts is partly dependent on the quality of the record below. *See In re Ross*, 858 F.3d 779, 786 (3d Cir. 2017) (noting that "when reviewing for abuse of discretion, [appellate courts] grant less deference to court decisions that are unaccompanied by reasoning" (citing *U.S. v. Bailey*, 840 F.3d 99, 117 (3d Cir. 2016))). Further, there is no affirmative duty placed on the reviewing court to scour the record for reasons to affirm. *Id.* Consequently, the reviewing court has the authority to vacate and remand a decision of a lower court if the lower court does not provide sufficient reasoning to support its decision. *Id.; see also In re Gioioso*, 979 F.2d 956, 964 (3d Cir. 1992) (Roth, J., concurring) (finding it to be essential for a lower court to include discussion of its analysis "to insure that its discretion has not been abused").

## III. <u>DISCUSSION</u>

### A. SB's Appeal of A&D's Fee Award

Pursuant to 11 U.S.C. § 330(a)(1), a bankruptcy court may award an attorney, employed under section 327, "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." The rule requires the bankruptcy court to determine the amount of reasonable compensation by considering the nature, extent, and value of the attorney's services, taking into account factors such as the time spent on the services, the rates

charged, whether the services were "necessary" or "beneficial at the time of the service" to the administration of the estate, and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners. *Id*. § 330(a)(3); *see also In re Cengaro, Int'l, PLC*, 294 B.R. 571, 595 (Bankr. S.D.N.Y. 2003) (quoting *In re Ames Dep't. Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996)) (stating that § 330 requires bankruptcy courts to conduct an "objective inquiry, 'based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances.'").

The fee applicant bears the burden of proving it has earned the fees requested and that the fees are reasonable. *Zolfo*, 50 F.3d at 260. The applicant must submit fee applications with sufficient detail to enable the court to reach an informed decision. *In re Temple Retirement Cmty., Inc.*, 97 B.R. 333, 339 (Bankr. W.D. Tex. 1989). This obligation is also reflected in the Local Bankruptcy Rule governing applications for compensation. *See* D.N.J. LBR 2016-1 (requiring that an application for compensation include a "narrative explanation of the nature of the work performed and the results achieved . . . [and any] circumstances . . . the applicant wishes to emphasize . . . [including] reasons for substantial time billed for a particular activity."). In reviewing the applicant's submission, the bankruptcy court "is obliged [to] carefully consider the documentation submitted by applicants for fees and expenses." *Zolfo*, 50 F.3d at 263. This duty to conduct an independent examination of fee applications is grounded in the "court's inherent obligation to monitor the debtor's estate and to serve the public interest." *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 841 (3d Cir. 1994).

Here, for purposes of clarity, the Court has grouped SB's objections to A&D billing records under four categories: (1) A&D work on behalf of the Trustee should be considered trustee services, rather than legal services; (2) A&D's work did not materially benefit the bankruptcy

estate; (3) tasks billed by an A&D senior partner did not require a senior attorney; (4) the Bankruptcy Judge's review of timesheets and SB objections regarding particular entries was insufficiently reasoned.  I will address these categories separately.

### i. Whether Certain Time Entries Were Trustee or Legal Services

The Bankruptcy Court did not abuse its discretion in determining certain entries were appropriately categorized as legal services, rather than trustee services.  In the Memorandum Opinion, the Bankruptcy Court explained that it "must be careful to ensure that no purely trustee duties are billed as attorney work[,]" and "an attorney is never entitled to professional compensation for performing duties which the statute imposes upon the trustee."  Memorandum Opinion at 17 (quoting *In re Garcia*, 317 B.R. 810, 816 (Bankr. S.D. Cal. 2004)) (citing *In re Mckenna*, 93 B.R. 238, 241 (Bankr. E.D. Cal. 1988)).  In that vein, regarding the Second Fee Application, the Bankruptcy Court reduced A&D's fee award after finding examples of work billed by A&D that were trustee work, including time billed communicating with creditors and reviewing claims, which were "quintessentially trustee functions."  *Id*. at 17-18.  Further, the Bankruptcy Court noted that certain entries were billed after A&D was replaced as counsel, which the Bankruptcy Court assumed were trustee entries, or otherwise such work would be unnecessary duplication of services.  *Id*.  Regarding the First Fee Application, the Bankruptcy Court overruled SB objections that review of legal documents was not a trustee function, as well as objections that the Trustee need not concern himself with litigation outside the bankruptcy proceedings.  *Id*. at 22. The Bankruptcy Court also noted that A&D's attempts to settle certain litigations were reasonably undertaken at the time and not excessive.  *Id*. at 22-23.  Lastly, the Bankruptcy Court reduced the fee award because there were entries that were clearly trustee work or the entries did not have sufficient detail to determine whether trustee or legal work had been performed.  *Id*. at 23.

SB asserts that certain categories of work A&D completed on behalf the Trustee were, actually, trustee services rather than legal services.  Br. of Appellant at 4-7.  This includes negotiating with Iron Mountain and obtaining the Bankruptcy Court's approval of a Consent Order to provide the Trustee additional time to sell the Property, engaging in settlement communications with adverse parties that were litigating the value of the Property, and performing services related to approval of the auction on the Property and closing the sale.  *Id*.[5]  In its defense, A&D contends that these attorney services were reasonable and necessary to the administration of the estate.  Br. of Appellee at 30.  According to A&D, negotiating and obtaining the Consent Order resulted in an automatic stay of Iron Mountain's Sheriff sale, without a contested hearing, and would permit the sale of the property.  *Id*.  A&D stated that such a sale was in the best interests of the estate, because the sale proceeds could result in full payment to all creditors.  *Id*.  Similarly, regarding the state court litigation concerning sewer access to the Property, A&D submits that its work achieved a global settlement of issues that furthered the Trustee's goal of selling the Property before the automatic stay expired.  *Id*.  A settlement of these issues, according to A&D, would allow the Property to be sold for a higher value, thereby benefitting the estate.  *Id*. at 12, 30.  Finally, related to the auction, among other things, A&D prepared and filed documents related to the auctioneer's appointment, reviewed a proposed sale contract provided by a real estate broker on behalf of a potential buyer, reviewed a sale contract and term sheet for use at the auction, and reviewed an environmental study to be presented at the auction for bidders.  *Id*. at 15-16.

It is "well settled that courts may not compensate an attorney appointed to represent the trustee for services statutorily required of the trustee."  *In re King*, 88 B.R. 768, 770 (Bankr. E.D.

---

[5] SB objected to 11 A&D time entries on this basis, which they claim would support a 30-hour reduction of billing, totaling $17,499.  *Id*. at 7.

Va. 1988).  11 U.S.C. § 704(a), titled "Duties of Trustee," provides that the Trustee shall, among other duties, "(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; (2) be accountable for all property received; (3) ensure that the debtor shall perform his intention as specified in section 521(a)(2)(B) of this title; (4) investigate the financial affairs of the debtor; (5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper; (6) if advisable, oppose the discharge of the debtor; (7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest[.]"  Further, as noted by the Bankruptcy Court, the following services are considered typical trustee duties for which attorneys' fees are not compensable: "Services relating to sale of the debtor's assets; collection of accounts due; examination of the debtor's papers; preparation of notices and advertisements for the sales of the debtor's assets, and license renewals; routine telephone calls and correspondence with information seekers; reduction of the estate to money; payment of routine bills, including taxes; arranging insurance coverage; arranging for appraisals of the estate; corresponding with creditors re documentation of claims; reviewing title reports; preparing and filing objections to claims; preparing application for employment of professional; acting as liaison with special counsel."  Memorandum Opinion at 17 n.51 (quoting *In re Mckenna*, 93 B.R. at 241).

This Court finds that the Bankruptcy Court did not abuse its discretion in determining whether certain entries constituted trustee or legal services.  On an abuse of discretion standard, I must defer to the Bankruptcy Court as to its factual findings, particularly with regard to the Bankruptcy Court's determination of what constitutes Trustee work, since the Bankruptcy Court is in the best position to do so.  In that regard, the Bankruptcy Court carefully considered SB's

objections in this context.  *See* Memorandum Opinion at 22 ("[T]he court reviewed each entry and attempted to ascertain the nature of the objection to each entry, based on loosely grouped categories that are themes in the objection.").  In the Second Fee Application, the Court reduced A&D's fee award by at least $6,357 due to "numerous examples" of work more correctly characterized as trustee work, such as communicating with creditors and reviewing claims, as well as entries after A&D was replaced as trustee counsel which the Bankruptcy Court considered duplicative.  *Id*. at 17-18.  In the First Fee Application, the Court reduced the fee award by $4,798, in part, because there were entries that were "clearly trustee functions."  *Id*. at 23.[6]

With regard to A&D work outside the bankruptcy proceedings, such as settling the sewer litigation and negotiating a consent order to stay the Sherriff's sale of the Property, in the First Fee Application, the Bankruptcy Court overruled SB's objections, finding that "[a] lawyer in a case as complex and litigious as this one cannot be expected to provide services while wearing [blinders]." Memorandum Opinion at 22.  I agree.  Based on this case's history, which this Court is intimately aware of from prior iterations of this matter,[7] the subject billing cannot be categorized as trustee work as it is legal work central to the sale of the Property.  Negotiating a Consent Order that stayed the Sherriff's sale of the Property does not fall within the categories of trustee work listed *supra*, but rather, it assisted the Trustee in carrying out his duty to "collect and reduce [the Debtor's estate]

---

[6] Examples of billing entries objected to by SB on this ground include: "Preparation of application, certifications and proposed order to appoint attorney;" "Review of notice of clerk re: filed application for attorney;" "Review of correspondence of attorney for Readington to Court w/attachments;" "Review of court notice and Order appointing attorney[.]"  Bankr. Dkt. 216 Exs. A, B.

[7] *See In re Route 388 Route 22 Readington Holdings, LLC*, No. 20-01252, 2020 WL 4282748 (D.N.J. July 27, 2020) (granting Trustee's motion to dismiss appeal of Property sale and discharging *lis pendens*); *In re Route 388 Route 22 Readington Holdings, LLC*, No. 20-02954, 2020 WL 6707958 (D.N.J. Nov. 16, 2020) (finding attorneys' fees agreement not discharged by foreclosure judgment).

to money[.]" 11 U.S.C. § 704(a)(1).  Further, as the Bankruptcy Court appropriately found, the communications with counsel in the sewer litigation were critical in assisting the Trustee to obtain the most value in dispensing of the Property, and such litigation settlement activities are inherently legal and are also not contemplated by traditional Trustee activities.  *See* Memorandum Opinion at 23.  Finally, with regard to services related to the Property Auction, A&D explained that they prepared and filed legal documents regarding the auctioneer's appointments, reviewed a potential buyer's sales contract for the Trustee, and reviewed a sale contract and term sheet for the auction. Br. of Appellee at 15-16.  All of these activities advising the Trustee are legal in nature.  11 U.S.C. § 327(a) ("[T]he trustee, with the court's approval, may employ one or more attorneys . . . to represent or assist the trustee in carrying out the trustee's duties under this title."); *see Mondelli v. Coldwell Banker*, No. 07-5839, 2008 WL 1990671, at *2 (D.N.J. May 2, 2008) ("Under 11 U.S.C. § 327, the trustee may employ professionals to assist with the trustee's duties.").

Moreover, SB fails to establish that the Bankruptcy Court abused its discretion.  SB provides only bare assertions for its proposition that the A&D billing categories to which it objected were trustee work rather than attorney work.  SB does not explain or cite to any case law at any point how any of the objected entries fit within the typical trustee services discussed, *supra*, by the Bankruptcy Court, or establish that these entries fell within statutory duties of the Trustee. *See* 11 U.S.C. § 704(a).  Rather, SB merely argues that it objected to 11 of A&D's time entries, and that because the Bankruptcy Court did not agree with each objection, the court must have abused its discretion.  Br. of Appellant at 7.  That is insufficient on appeal.  Accordingly, I do not find that the Bankruptcy Court abused its discretion.

### ii.  Actions Challenged as Not Beneficial to the Bankruptcy Estate

SB challenges two categories of billing entries by A&D as not beneficial to the bankruptcy estate.  First, SB claims that time spent by A&D relating to Iron Mountain's request that its legal fees be included within its secured claim had no benefit to the bankruptcy estate.  Br. of Appellant at 7.  More specifically, SB maintains that A&D acted contrary to the interests of the estate by objecting to SB's opposition to Iron Mountain's request.[8]  *Id*.  Second, SB claims that work performed to remove a *lis pendens* placed on the Property by SB did not confer any benefit on the estate because, at the time, the Property was no longer property of the bankruptcy estate.  *Id*. at 7-8.  Here, the Bankruptcy Court did not abuse its discretion in overruling SB's objection regarding Iron Mountain's attorneys' fees.  However, while I affirm the Bankruptcy Court's decision as to A&D's, *lis pendens* work, I slightly reduce the amount, as explained below.

Pursuant to 11 U.S.C. § 330(a)(1), a bankruptcy court may award to an attorney, employed under section 327, "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses."  The statute, "however, only requires that the services be reasonably likely to yield a benefit to the estate at the time they were provided; not that they actually do so."  *In re Mushroom Transp. Co., Inc.*, 486 B.R. 148, 163 (Bankr. E.D. Pa. 2013); *see* 11 U.S.C. § 330(a)(3)(C) ("In determining the amount of reasonable compensation to be

---

[8] In related prior proceedings, SB appealed the Bankruptcy Court's award of attorneys' fees to Iron Mountain as part of Iron Mountain's secured claim, arguing that the foreclosure judgment terminated Iron Mountain's mortgage note, which contained a provision providing for attorneys' fees after default.  *In re 388 Route 22 Readington Holdings, LLC*, No. 20-02954, 2020 WL 6707958 (D.N.J. Nov. 16, 2020).  Although this Court agreed with SB that Iron Mountain's mortgage note merged with the foreclosure judgment, and thus had terminated, I found that the Bankruptcy Court could have relied, instead, on a Confirmation Order from 2015, which created a repayment plan for SB to Iron Mountain and entitled Iron Mountain to attorneys' fees in the event of default.  *Id*. at *5.

awarded . . . the court shall consider . . . whether the services were necessary to the administration of, or beneficial at the time of which service was rendered toward the completion of[] a case[.]").

Regarding Iron Mountain's attorneys' fees, A&D argues that its attorneys reviewed Iron Mountain's proof of claim and amended proof of claim, corresponded with Iron Mountain's attorney seeking a proposed consent order regarding Iron Mountain's attorneys' fees, and in furtherance of the proposed consent order, the attorneys analyzed Iron Mountain billing statements in relation to their claim for attorneys' fees. Br. of Appellee at 16-17. When undertaken, these actions were clearly necessary and beneficial to the administration of the estate. The consent order negotiations, which ultimately failed, sought to settle with Iron Mountain attorneys' fees without the need for further litigation, which would have retained funds for the estate. *See In re 388 Route 22 Readington Holdings, LLC*, No. 18-30155, 2021 WL 112756, at *9 (D.N.J. Jan. 11, 2021) ("Determining whether compensation is necessary and reasonable, 'requires only that the services in question had a reasonable likelihood of benefitting the estate at the time they were provided, not that they actually did provide a benefit.'" (quoting *In re Jankowski*, 382 B.R. 533, 545 (Bankr. M.D. Fla. 2007)). Indeed, after the negotiations failed, Iron Mountain, filed a Notice of Cross Motion seeking to be paid in full at the time of the closing. Bankr. Dkt. 100. The issue of attorneys' fees was litigated by SB and Iron Mountain in the Bankruptcy Court, and subsequently, on appeal to this Court, where I ultimately found attorneys' fees were part of Iron Mountain's secured claim. *See In re 388 Route 22 Readington Holdings, LLC*, No. 20-02954, 2020 WL 6707958 (D.N.J. Nov. 16, 2020). Although SB argues that A&D's actions were contrary to the bankruptcy estate, insisting that the only valid position would have been to oppose attorneys' fees for Iron Mountain as part of its secured claim, SB fails to articulate why, at the time, its position was the only position beneficial to the estate, and A&D's attempts to reach a consent order

16

regarding attorneys' fees, instead, was not beneficial as well.  For these reasons, the Bankruptcy Court did not abuse her discretion.

Regarding the work performed as to the *lis pendens*, the Bankruptcy Court's fee reduction must be modified.  According to the Second Fee Application, A&D billed seven entries in March and April 2020 related to the *lis pendens*, totaling $1,003.00.[9]  Bankr. Dkt. 204 at 21, 22.  At that time, there was an ongoing appeal in this Court, as SB had appealed the Bankruptcy Court's decision to approve the Property sale.  Bankr. Dkt. 137.  On February 14, 2020, The Kelly Firm, PC, had been named special counsel for the purpose of litigating the appeal.  Br. of Appellee at 18; Bankr. Dkt. 145.  On March 19, 2020, the Kelly Firm filed a motion to dismiss SB's appeal and discharge the *lis pendens*.  *SB Building Associates Limited Partnership v. Atkinson*, No. 20-01252, ECF No. 21 (D.N.J. Mar. 19, 2020).  In light of this procedural history, it is clear that A&D was not the law firm responsible for legal services related to discharging the *lis pendens*.  The Bankruptcy Court correctly reduced A&D's fee award due to "numerous entries for time billed after the retention of the Kelly firm as attorneys for the trustee," which the Bankruptcy Court assumed were for Trustee services. Memorandum Opinion at 18.  However, the Bankruptcy Court only reduced the fee award by $399.00, and the amount billed by A&D for work related to the *lis pendens* is $1,003.00.  *Id*; *see* Bankr. Dkt. 204.  It appears that the Bankruptcy Court overlooked some entries billed as to the *lis pendens.*  As such, based on this Court's review, I find that the Second Fee Application must be reduced by an additional $604.00 on this basis.

---

[9] These entries are: (1) "Telephone conf. w/ Kelly re: *lis pendens*;" (2) "Review of email from Grasa re: *lis pendens*;" (3) "Telephone cof. w/Kelly re: *lis pendens*;" (4) "Review of correspondence of Upton re: *lis pendens*;" (5) "Correspondence w/Upton Regional title office re: *lis pendens*;" (6) "Review of correspondence and email of Taylor Lewis, Esq. and *lis pendens*/Berger letter;" (7) "Review of brief filed by SB re: mootness and *lis pendens*[.]"

### iii.   Hourly Fee Rates

SB argues, without further explanation, that "most of the tasks performed and set forth in the billings did not require a senior person," and therefore, "any allowance for such services should be at a substantially reduced rate."  Br. of Appellant at 8.  In that vein, SB states that had the Bankruptcy Court applied a more reasonable rate of $300 per hour—an amount for which, once again, SB provides no explanation whatsoever—for the entirety of A&D's services, the total award to A&D would have been nearly $27,000 lower.  *Id*.  I find that the Bankruptcy Court did not abuse its discretion in ruling on these issues.

With regard to the billing rate, "a bankruptcy judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the *starting point* for any analysis."  *In re Busy Beaver*, 19 F.3d at 854.  "Then the court should carefully consider relevant, competent evidence submitted with the fee application . . . even if the evidence directly contradicts the court's own judgement."  *Id*.  "Significantly, however, [the Third Circuit has] held the bankruptcy court may discount evidence presented by the fee applicant, since courts are themselves experts on the value of services rendered in a bankruptcy proceeding and are not bound by the evidence offered."  *Zolfo*, 50 F.3d at 258 (internal quotations omitted).  In light of this standard, the Bankruptcy Court did not abuse its discretion in analyzing A&D's fee rate.  First, after the Bankruptcy Court explained that A&D's fees were between $550 and $590 during its representation of the Trustee, the court noted that it "reviews hundreds of fee applications for services in the Trenton vicinage a year and is well aware of the hourly rates charged by bankruptcy professionals."  Memorandum Opinion at 26-27.  The Bankruptcy Court further explained that the "court is also quite familiar with the complexity and quality of the work done by the professionals in this case."  *Id*. at 27.  Next, the Bankruptcy Court

intimated that proving the reasonable hourly rate of a bankruptcy attorney usually requires that the relevant professional disclose the years he/she has been admitted as an attorney, as well as other professional accomplishments, which A&D did in this case. *Id*. As A&D explains in its briefing, Mr. Atkinson, for example, the attorney in the case, has over 30 years of experience as an attorney, trustee, special fiscal agent, and court-appointed receiver in various New Jersey courts. Br. of Appellee at 28. The Bankruptcy Court found, in light of its knowledge of appropriate fee rates, that the firm's experience supported A&D's hourly rate. Memorandum Opinion at 27. For comparison, the Bankruptcy Court noted that SB's attorneys had seven years *less* experience than some of A&D's attorney, yet was billing at a similar hourly rate of $525. *Id*. For these reasons, this Court finds that the Bankruptcy Court appropriately used its knowledge and experience to make a reasonableness determination, and therefore, did not abuse its discretion in finding the hourly rates to be reasonable.

Regarding SB's vague claim that "most" of the tasks performed did not require a senior person, it is wholly insufficient for this Court to find that the Bankruptcy Court's findings of fact on this subject were erroneous. The Bankruptcy Court "reviewed each entry and attempted to ascertain the nature of the objection to each entry," and on that basis, explained which objections were and were not valid, and then made various reductions to the fee award. Memorandum Opinion at 22. Indeed, in the First Fee Application, this included a downward revision for "attorney time that should have been billed at a lower rate." *Id*. at 23 Based on this type of searching review, and SB's lack of specificity, I cannot find that the Bankruptcy Court abused its discretion.

#### iv.   Sufficiency of the Bankruptcy Court's Reasonableness Analysis

SB argues that while the "Bankruptcy Court's reasons for reducing A&D's fee application were appropriate[,] . . . the amount of the reductions . . . were insufficient."  Reply Br. of Appellant at 6-7.  According to SB, had the Bankruptcy Court accepted each of SB's line-by-line objections of A&D's Applications, A&D's award between the two Fee Applications "should have been, at most, $24,434, not $70,058 as the Bankruptcy Court ruled."    Br. of Appellant at 11.  In that connection, SB asserts the Bankruptcy Court's decision required "a substantially more detailed itemization" and analysis of SB's line objections, and therefore, the Bankruptcy Court failed to appropriately provide its reasons for the fee revisions.  *Id*. 7.  I disagree, and find that the Bankruptcy Court sufficiently analyzed A&D's Fee Applications.

In reviewing an applicant's fee submission for reasonableness, the bankruptcy court must conduct an independent examination of the fee application and carefully consider the submitted documentation.  *See Zolfo*, 50 F.3d at 263 (explaining that the Bankruptcy Court "is obliged [to] carefully [] consider the documentation submitted by applicants for fees and expenses."); *In re Busy Beaver*, 19 F.3d at 841 (noting that the duty to conduct an independent examination of fee applications is grounded in the "court's inherent obligation to monitor the debtor's estate and to serve the public interest.").  But a bankruptcy court's "analysis and explanation of the fee award does not have to be [] detailed to the extent that it provides a line-by-line explanation of the application for compensation in its entirety, rather the explanation needs to be detailed enough so that the reviewing court is in a position to understand the trial court's rationale for a particular fee award."  *In re Parrilla*, 530 B.R. at 17; *see In re Sullivan*, 674 F.3d 65, 71 (1st Cir. 2012) ("There is no requirement that a bankruptcy court, in explaining a fee award, be precise to the point of pedantry.  Instead, the explanation need only be sufficiently detailed to allow a reviewing court to

ascertain the trial's court's thought processes and glean the basis for its award."); *In re Tahah*, 330 B.R. 777, 781 (10th Cir. BAP 2005) ("[T]he analysis under § 330 does not require a detailed review and discussion of the line-by-line entries.  The court may make a subjective judgment based on the entire circumstances presented.").

At the outset, the Court notes that SB complains about the amount of detail in the Bankruptcy Court's analysis, but, cherry picks its support of the Bankruptcy Court's reasoning in the instances where the Bankruptcy Court *did* revise downward.  *See* Reply Br. of Appellant at 6-7 ("The Bankruptcy Court's reasons for reducing A&D's fee application were appropriate[,] . . . [i]t is the amount of the reductions which SB contends were insufficient.").  Tellingly, SB's objections lie with the ultimate amount of fees awarded, not the thoroughness of the Bankruptcy Court's reasoning. In that regard, dissatisfaction with the fee award is not a basis to find the Bankruptcy Court abused its discretion.

In any event, I find the Bankruptcy Court provided sufficient detail for this Court to understand its rationale in awarding fees, and therefore, the Bankruptcy Court did not abuse its discretion.  As SB itself explains in detail, the Bankruptcy Court agreed with numerous categories of objections made by SB.  In the First Fee Application, the Bankruptcy Court found that A&D time entries failed to include sufficient detail to determine whether the entries were trustee or legal services, inappropriately included entries billed for .1 for "left message" or "review" of perfunctory documents, contained activities clearly reserved for trustees, and covered activities that should have been billed at a lower rate.  Br. of Appellant at 8-9; Memorandum Opinion at 23. Similarly, in the Second Fee Application, the Bankruptcy Court found multiple entries lacked sufficient detail, and numerous entries constituted trustee functions, rather than attorney functions. Br. of Appellant at 10; Memorandum Opinion at 18.  Based on the entries that the Bankruptcy

Court found insufficient, it made various downward revisions.  While the Bankruptcy Court does not provide a "line-by-line explanation for compensation in its entirety," such an analysis is . . . not required.  *In re Parrilla*, 530 B.R. at 17.  As discussed throughout this Opinion, the Bankruptcy Court's evaluation of the Fee Applications demonstrates a detailed, independent review, and it permits this Court to review the bases for the Bankruptcy Court's decisions, even if the Bankruptcy Court did not detail which exact entries were subject to the downward revision.  For these reasons, I reject SB's final argument that the Bankruptcy Court's reasons in support of its fee award were somehow deficient.

### B.  A&D's Cross-Appeal

On cross-appeal, A&D argues that the Bankruptcy Court erred in reducing its fee award in both Applications, and that A&D should receive the full requested amount.  Br. of Appellee at 24. Regarding the First Fee Application, A&D submits that the fee award should not have been reduced, because SB did not initially object to the First Fee Application, and therefore, should not be allowed to do so.  In addition, A&D claims that all work performed by the firm was necessary and beneficial for the estate.  Regarding the Second Fee Application, A&D maintains that all billing entries contained sufficient detail to show that its services were reasonably necessary for the administration of the state.  Further, A&D argues that the Bankruptcy Court erred as a matter of fact in reducing the Second Fee Application by $6,106.85, because the Bankruptcy Court failed to consider three pages of time entries that were included in the Fee Application.

As an initial matter, and as discussed in detail *supra*, the Bankruptcy Court appropriately and correctly analyzed the reasonableness of both Fee Applications by carefully considering the time entries and the objections by the parties. The Memorandum Opinion provided sufficient explanation for the Bankruptcy Court's decisions to either accept or overrule various time entry

categories.  For all the reasons stated, *supra*, the Bankruptcy Court did not abuse its discretion in reducing the awards in the Fee Applications.

Next, A&D is incorrect as a matter of law that the Bankruptcy Court could not re-examine the interim award. 11 U.S.C. § 331, titled "Interim Compensation," allows attorneys to apply for compensation for services rendered before the date of application or reimbursement of expenses as provided under § 330.  Moreover, § 330(a)(5) "specifically permits a court to order disgorgement of interim payments received under section 331, to the extent they exceed the ultimate amount awarded under section 330."  *In re Rockaway Bedding, Inc.*, 454 B.R. 592, 596 (Bankr. D.N.J. 2011).  "Thus, interim awards to professionals are always subject to re-examination and adjustment, and no professional may claim to be unaware of the inherent risk of disgorgement."  *Id.* (internal quotations and citation omitted).  In light of this discretion, the Bankruptcy Court had the statutory duty to re-examine the First Fee Application before the final fee award.  And, the Bankruptcy Court's reasons for re-examining the interim award were valid. First, because the Trustee was awarded his full trustee commission, the Bankruptcy Court deemed it important to ensure that no trustee activities were inadvertently compensated as attorney functions, which would be a duplicative recovery.  Memorandum Opinion at 21.  Second, because Mr. Atkinson, attorney for A&D, billed at the top of his hourly rate, the Bankruptcy Court sought to ensure that no legal work was billed at a rate for activities reserved for clerical staff or an attorney at a lower rate.  *Id.*  Indeed, the Bankruptcy Court is required to undertake an independent examination of Fee Applications to ensure only reasonable compensation for actual and necessary services is reimbursed.  To do so was not clearly erroneous.[10]

---

[10] A&D also confusingly argues that the First Fee Application cannot be re-examined and downwardly adjusted because Mr. Atkinson's fee rate was appropriate.  Br. of Appellee at 27-30. Mr. Atkinson's fee rate is not why the Bankruptcy Court re-examined the First Fee Application.

Finally, according to the Bankruptcy Court, A&D failed to show that the Second Fee Application's billing entries totaled the requested amounts of $56,900 in attorneys' fees and $247.25 for expenses, because the balance at the end of the time records provides that the total balance due was $50,793.15 for attorneys' fees and $156.15 for expenses. Memorandum Opinion at 18-19. A&D's Second Fee Application consists of two billing periods, the first from June 3, 2019 to January 31, 2020 ("First Billing Period"), and the second from February 1, 2020 to August 6, 2020 ("Second Billing Period"). Bankr. Dkt. 204. The ending fee balance for the First Billing Period was $33,357.00 and $91.10 in expenses. *Id*. at 13-14. The ending fee balance for the Second Billing Period was $23,543 and $156.15 in expenses. *Id*. at 22. This combined amount equals $56,900 in fees and $247.25 in expenses.

It is A&D's contention that the Bankruptcy Court overlooked three pages in the second corrected Second Fee Application. Br. of Appellee at 8; Bankr. Dkt. 204. This is incorrect, because in reviewing the Second Fee Application, the Bankruptcy Court cited to the second corrected Second Fee Application when explaining that A&D failed to meet its burden in showing that the time entries totaled $56,900 in attorneys' fees and $247.25 in expenses. Memorandum Opinion at 18-19. Therefore, based on the record, I find that the Bankruptcy Court did consider the three referenced pages. However, what appears to be the error is a mathematical one contained in A&D's Second Fee Application. The Bankruptcy Court correctly notes that the Application's billing sheets total the balance due as Application is $50,793.15 and $156.15 in expenses. *See* Bankr. Dkt. 204 at 22. But it appears that these totals are due to a calculation error in the

---

In fact, the Bankruptcy Court found Mr. Atkinson's fee rate to be valid when challenged by SB. Memorandum Opinion at 26-27. Rather, the issue was the *type* of work being charged at that rate. Appropriately, the Bankruptcy Court sought to "ensure that no amounts were billed at that rate that could or should have been performed by clerical staff or attorney at a lower hourly rate." *Id*. at 21.

Application.  The $50,793.15 appears to be the result of adding the Second Billing Period charges ($23,543.00) and expenses ($156.15), to a category in the Fee Application titled, "previous balance," which appears to be the First Fee Application award ($27,094.00).[11]  This was not the correct method of calculating the Second Fee Application total balance.  The Application should have, instead, added the Second Billing Period charges ($23,543.00) and expenses ($156.15) to the First Billing Period charges ($33,357.00) and expense ($91.10), which would have equaled the Second Fee Application requested amounts of $56,900 and $247.25.  Because the Bankruptcy Court used an incorrect total of fees and expenses in calculating its decision on the total award, I modify the award to an additional $6,106.85 in attorneys' fees and $91.10 in expenses to correct this error.

## IV.   **CONCLUSION**

For the foregoing reasons, this Court affirms the Bankruptcy Court's decision as to the First Fee Application; that is, A&D is awarded $21,501.00 in attorneys' fees and $254.82 in expenses.  With respect to the Second Fee Application, the Court modifies the Second Fee Application by upwardly adjusting the attorneys' fees in the amount of $5,502.85[12] and expenses in the amount of $91.10.

Date:   December 23, 2021                           /s/ Freda L. Wolfson
                                                     Freda L. Wolfson
                                                     U.S. Chief District Judge

---

[11] The "previous balance" amount is $27,094.00, but the amount awarded for attorneys' fees from the First Fee Application is $27,049.00.  The Court presumes that the "previous balance" listed is a small error based on transposing numbers.

[12] $6,106.85 (Second Fee Application calculation error) - $604.00 (additional *lis pendens* entries) = $5,502.85.